ARROYO ET AL., PLAINTIFFS AND APPELLANTS, *v.* BRUNO ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Guayama in an Action of Nullity of Designation of Heirs, etc.

No. 1368.—Decided May 9, 1916.

GIFT—POSSESSION—DESIGNATION OF HEIRS—FRAUD—COMPLAINT.—When a plaintiff alleges in his complaint that the former owner of a certain property gave it to his predecessor in interest and that his said predecessor and he have been in the quiet and peaceful possession thereof as owners for more than ten years; that the plaintiff is still in possession thereof, and that by means of a false and fraudulent designation of heirs the defendant caused the ownership of the said property to be recorded in his name in the registry of property, the said complaint alleges facts sufficient to constitute a cause of action.

ID.—PRESCRIPTION—TITLE.—When the real title asserted by a plaintiff is not one acquired by gift, but by prescription, it is not essential that the gift be a perfect one.

ID.—PUBLIC INSTRUMENT—ACCEPTANCE — POSSESSION—PRESCRIPTION.—Although a gift of real property may not be evidenced by a public instrument, as required by section 641 of the Civil Code, if the donee accepts it, enters into possession of the property donated as owner and continues in the public, peaceful and uninterrupted possession for a period of ten years, the failure to make the gift by public instrument is cured by prescription.

ID.—HEIRS.—A defendant who is not a lawful heir of the donor has no right to impugn a gift made by the latter.

The facts are stated in the opinion.
*M1. José C. Ramos* for the appellants.
*Mr. C. Domínguez Rubio* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The complaint in this action, in so far as pertinent, is as follows:

"Now come Carmen Arroyo, of age, widow, landowner and resident of Patillas, as mother with *patria potestas* over her minor children José and Agapito Díaz y Arroyo, and Petrona, Ramona and Lino Díaz y Arroyo, of age, landowners and also residents of Patillas, by their attorney, José C. Ramos, and complain of the above-mentioned defendants, José Bruno Morales and María Antonia Morales, of age and residents of Arroyo, and for cause of action allege:

"*First.* In the beginning of October, 1914, the plaintiffs brought proceedings in this court in civil case No. 2504 to prove the possession and ownership by their father and predecessor in interest, Sotero Díaz, of the following property: (Description).

"*Second.* Said property, now worth $520, was acquired by the said Sotero Díaz, father of the plaintiffs, by a private deed of gift made in his favor by Isabel García, who died without leaving any heirs at law.

"*Third.* Defendant José Bruno Morales appeared before this court in civil case No. 2486 and by illegally and fraudulently introducing false evidence and deceiving the court, caused himself and his sister, the other defendant herein, as second cousins of Isabel García, to be adjudged by a decree of this court dated October 16, 1914, the heirs of the said Isabel García, who made the gift to the plaintiff's predecessor in interest, there being no ascendants or descendants or nearer collateral relatives.

"*Fourth.* The said descendants presented a certified copy of the declaration of heirship in the Register of Property of Guayama and on folio 118 of volume 8 of Patillas caused to be recorded in their names a parcel of 19 *cuerdas* of land which appeared in the said registry in the name of the said Isabel García and forms a part of the property of 29.5 *cuerdas* described in the first clause of this complaint. Later, or on November 12, 1914, they appeared before this court and opposed the proceedings for the approval of the dominion title to the said property as prayed for in said civil case No. 2504, on the alleged pertinent ground of the said false and fraudulent declaration of heirship.

"*Fifth.* The defendants had and have no right to represent themselves as the heirs of the said Isabel García, because she left four nephews and nieces named Lorenza, Miguel Mateo, María Clotilde and another whose name is not known to the plaintiff, who are the

children of her sister, Emilia García, the filiation of the first three being verified by the exhibits marked 'A,' 'B' and 'C' which are hereto attached and made a part of this complaint; and according to plaintiffs' information and belief, all of them now reside in San Lorenzo, Gerona, Cataluña, Spain.

"*Sixth*. That by virtue of their fictitious title as heirs of Isabel García the defendants claim to be the owners of the property described in the first clause of this complaint, which property is in the possession of the said plaintiffs, who, together with their father and predecessor in interest, Sotero Díaz, have been in the quiet and peaceful possession thereof as owners for more than ten years by virtue of said deed of gift, and in the name of the father are bringing the dominion title proceedings referred to in the first clause of this complaint, which proceedings are opposed by the defendants, who, as heirs of Isabel García, are attacking the validity of the deed of gift to plaintiffs' predecessor in interest. By these acts the said defendants are disturbing the plaintiffs in the free use of the said property and claiming a right thereto in opposition to the rights of the plaintiffs.

"*Wherefore,* the plaintiffs pray the court to set aside its decree declaring the defendants to be the heirs of Isabel García and to order that the record of the defendants' title to the property of 19 *cuerdas* which is included in that of the 29.5 *cuerdas* of land described in the complaint, appearing on page 118 of volume 8 of Patillas, be canceled in the registry of property and that the defendants be enjoined from doing anything to disturb the plaintiffs in the free use of the said property, and from claiming as heirs of Isabel García any interest in the property of 29.5 *cuerdas* described in the complaint in opposition to the rights of the plaintiffs. And the plaintiffs further pray that the court grant them such other relief as it may deem fit and in keeping with their allegations, with costs and disbursements including a reasonable attorney's fee."

The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action and on May 4, 1915, the court rendered judgment dismissing the complaint on the ground set out in defendants' demurrer. Thereupon the plaintiffs took the present appeal.

In its opinion the trial court sums up the question involved in the following manner:

"From the face of the complaint it appears that when Isabel

García, defendants' predecessor in interest, died she owned a property of 29.5 *cuerdas* of land in Patillas; that by a private instrument she donated the said property to Sotero Díaz, father of the plaintiffs, from whom they acquired the said property. If the gift is good in law, there is no doubt that Sotero Díaz acquired a property right which he passed to his heirs with power to defend it. If the gift is voidable, it may be ratified by García's successors in interest and the plaintiffs are also entitled to prove who are the rightful heirs, for upon their acts depends the validity of the plaintiffs' rights. If the gift is void *per se*, it follows that the complaint should allege that the rightful heirs are disposed to ratify the gift made by their decedent and then the wrongful designation of a person as heir may affect the plaintiff's title of ownership."

Continuing, the court cites section 641 of the Civil Code which provides that in order that a gift of real property may be valid it shall be made in a public instrument, and after citing the opinion of Commentator Manresa, concludes as follows:

"If we examine the complaint we shall find that although it alleges that Isabel García donated the said property to Sotero Díaz, it does not state that the gift was accepted or that it was made in a public instrument or that its acceptance was communicated to the donor in the manner required by law; nor does it allege that the heirs residing in Spain are disposed to ratify the said gift or that they would ratify it if they were declared the heirs in place of the defendants.

"Wherefore, the court holds that the demurrer filed by the defendants should be sustained  *  *  *."

We have examined the complaint carefully and are of the opinion that it should not have been dismissed by the court. We think that the facts alleged therein support the right of the plaintiffs to be upheld at least on the ground of possession.

The plaintiffs not only allege that the former owner of the property in question donated it to their predecessor in interest, but also maintain that first their predecessor and then they themselves have been in possession of the same as owners for more than ten years and that they are still in possession. The acts of the defendants constitute a direct

attack upon any right which the plaintiffs may have and have created a conflict which the courts are bound to decide.

Natural possession is the holding of a thing or the enjoyment of a right by any person. Civil possession is the same holding or enjoyment joined to the intent of holding the thing or right as one's own. Section 433 of the Civil Code.

In this case the plaintiffs allege that they hold the civil possession of the property in question. They further allege that the defendants by fraudulent means caused the ownership and, therefore, the civil possession of the said property to be recorded in their names in the registry of property.

Section 448 of the Civil Code provides that every possessor has a right to be respected in his possession and if he be disturbed therein, he shall be protected or reinstated in such possession by the means established in the laws of procedure. Commenting upon article 446 of the Spanish Civil Code, which is the same as section 448 of our code, Manresa expresses himself as follows:

"Every right must be respected by all, and possession, as a right, even when exercised only, is entitled to the same respect. Hence the provision of the first part of article 446. If such respect is not observed the law will enforce it. Want of respect is construed to mean acts which disturb and molest the possessor, which may consist of a mere threat of dispossession or of dispossession itself. This is why the second part of article 446 provides that the possessor shall be protected (maintained) or reinstated in such possession. How? By the means established in the laws of procedure. It should be noted that it does not say by means of interdicts to retain and recover, but in general by the means established by the laws of procedure." 4 Manresa, Spanish Civil Code, 205.

Moreover, even if it be concluded that section 446 of the Civil Code is not applicable to this case, we are of the opinion that the right of the plaintiffs is manifest. According to the registry, the defendants now appear as the real owners of the land which is in the possession of the plaintiffs. This being the case, how can the plaintiffs be barred from alleging and proving before a court of justice that the defendants

have succeeded in obtaining their title, which is adverse to that of the plaintiffs, by fraudulent means? In denying the validity of the plaintiffs' title the judge of the district court classified it merely as a title by donation, but the fact is that although a title by gift is alleged as a basis of its acquisition, the true title claimed is not one acquired by gift, but by prescription. In such circumstances it is not essential that the gift be a perfect one. Let us see what Commentator Manresa has to say on this point.

"We have stated elsewhere that although it is essential that the title on which prescription is based should be one which transfers the ownership, as this determines its character of being a *just* title, it is not equally essential, however, that the title of itself should establish the validity of the transfer. It will be seen that such condition is not indispensable, for if it were required in order that the title might be considered a *just* title that it had already transferred the ownership or right claimed by prescription, then prescription would be unnecessary because the juridical effect sought thereby would be obtained without it.

"That such is not the purport of said article 1952, good sense indicates. It provides and was only intended to provide that a just title is one which is sufficient in law to transfer the ownership or property right claimed by prescription, but it is not required as a necessary condition therefor that the transfer of the said ownership or interest shall have been accomplished or perfected already. On the contrary, a title capable of producing that juridical effect, but which has not yet done so, is what is necessary upon which to base prescription, and it is in this sense that the said article should be construed." 12 Manresa, Spanish Civil Code, 840.

In the case of *Picart* v. *De León,* 22 P. R. R. 553, this court laid down the following doctrine:

"From 1893, when the person who sold to the defendant acquired the property and took actual possession thereof, until the date when the complaint was filed, there was a lapse of more than the ten years necessary to acquire ownership by prescription as to persons present. *Held:* That the lapse of ten years perfected the original title of purchase. What the first known owner of the property, the plaintiff, or the judge who ordered the sale, failed to do was done by actual

possession as owner for ten years based on a just title and held in good faith, publicly and among persons present, without interruption on the part of any one.'' (Syllabus.)

It is perfectly true that section 641 of the Civil Code now in force, which is the same as article 633 of the old code, provides that in order that a gift of real property may be valid it shall be made in a public instrument and that in the present case the gift was not made by a public instrument but by a private document. Had the gift been made by a public instrument, the contract would have been perfected at that time and it would not be necessary to invoke prescription, as has been done. If in order to acquire property by prescription founded on a just title by gift the donation had to be perfect from the beginning, prescription would be entirely unnecessary.

An acceptance of the theory maintained by the district court would be to place the plaintiffs in this case on a level with those who, without the consent of the owners, enter upon a property and, representing themselves as owners, continue in the uninterrupted possession thereof for thirty years or more, and such a holding would be altogether unjust. The plaintiffs have not acted in bad faith. Their good faith is evident. They did not enter into possession of the property in question without the consent of the owner. On the contrary, the owner voluntarily allowed them to take possession and, what is more, executed a private instrument transferring the ownership to them. The gift was not made nor did the donee express his acceptance in a public instrument, but accepted the gift by entering into possession as owner of the donated property. Thus the contract began to produce all its effects in fact and continued to do so for a period of ten years, and in that manner what the public instrument failed to do was done by peaceable, quiet and uninterrupted possession as owner for ten years. Such, in our opinion, is the reasonable construction of the provisions of the

Civil Code relative to acquisition by prescription based on a just title and good faith in relation to those regulating gifts.

Moreover, as the defendants are not the lawful heirs of the donor, it is obvious that they have no right of action to oppose the gift to which the complaint refers. Such right of action, if any there be, inures exclusively to the lawful heirs, who, according to the complaint, are persons distinct from the defendants.

In view of the foregoing, the judgment appealed from should be reversed, the demurrer by the defendants overruled and the court ordered to proceed with the case in conformity with the principles laid down in this opinion.

*Reversed and remanded.*

Justices Wolf and Hutchison concurred.

Chief Justice Hernández and Justice Aldrey concurred in the judgment.